**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**TONYA B. o/b/o A.M.C.,**

                              **Plaintiff,**

        **v.**                                                          **5:21-cv-00787**

**COMMISSIONER OF SOCIAL SECURITY,**

                              **Defendant.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


                              **DECISION & ORDER**

        Plaintiff Tonya B. ("Plaintiff") brings this action pursuant to the Social Security Act, 42

U.S.C. § 405(g), for review of a final determination by the Commissioner of Social Security

("Commissioner" or "defendant") denying her application for Title XVI Supplemental Security

Income benefits on behalf of A.M.C., a minor child ("Claimant"). Pursuant to Northern

District of New York General Order No. 8, the Court proceeds as if both parties had

accompanied their briefs with a motion for judgment on the pleadings.

**I.      RELEVANT BACKGROUND**

        **A.  Procedural Status**

        On July 18, 2017, Plaintiff filed an application for Title XVI Supplemental Security

Income ("SSI") benefits on behalf of A.M.C., a minor child ("Claimant"), alleging a disability

onset date of August 17, 2009 due to learning disabilities, anxiety, and ADHD.

Administrative Transcript ("T") at 84, 248.  Her claim was denied initially on October 3,

1

2017, after which she filed a request for a hearing. T 84, 126. Following a hearing held on

April 3, 2019, Administrative Law Judge ("ALJ") David Romeo issued an unfavorable

decision dated April 15, 2019. T 1-31, 93.  Plaintiff requested Appeals Council ("AC")

review, which granted review on July 7, 2020. T 114.

> The AC stated in pertinent part:
>
> The hearing decision did not address relevant evidence. The claimant applied
> for benefits on June 15, 2017, and the hearing decision was issued on April
> 15, 2019. In the evaluation of the claimant's domains of functioning, however,
> the decision appears to rely on educational records from 2013 and 2014
> (Exhibits 5F and 10F). More recent testing, from June and July 2017, showed
> a decline in test scores and issues with fatigue and focusing in the classroom
> and a full scale IQ of 71, 17 points lower than testing in Exhibit 10F (Exhibit
> 15F, page 4). The administrator of the 2017 testing, Carrie A. Yaus,[1] opined
> that the claimant's cognitive abilities appeared to be in the borderline range
> (Exhibit 15F, page 4). The test administrator also noted that the claimant's
> 2017 reading, math, and writing scores were significantly below 2013 scores
> and that testing suggested minimal gain had been made in any skill area in
> recent years (Exhibit 15F, page 5). The hearing decision does not address this
> evidence. Further evaluation of the evidence is warranted.

T. 116.

The AC also noted, *inter alia*, that evidence from Liverpool School District was

excluded from the record without explanation. T 117.[2]  The AC vacated the earlier decision,

and remanded the case for further proceedings. T 117.

Upon remand, another hearing was conducted October 9, 2020 before ALJ Romeo.

---

[1]Dr. Yaus is a psychologist with the Syracuse City School District. *See* T. 264.

[2] Claimant transferred to the Liverpool Central School District, and the AC order indicates:

On April 11, 2019, prior to the date of the hearing decision, the claimant submitted evidence
from the Liverpool School District covering the period from February 27, 2019 through March
21, 2019. The hearing decision did not explain whether the factors in 20 CFR 416.1435(b)
were considered when excluding this evidence. On remand, the hearing decision should
consider these records.

T 117.

T 33.   At the hearing, the ALJ stated that "[t]he proceeding involves an application for child's supplemental security income that was denied on initial review and after hearing, and we are back pursuant to an Appeals Council remand with specific indication that, with respect to new evidence, a decline in functioning should be considered and reconciled, and there's additional up-to-date treatment and education records."  Tr. 35.  The ALJ issued a second, unfavorable decision on October 29, 2020. T 64-73.  In this regard, as is relevant here, the ALJ found that Claimant had less than marked limitations in the domains of "acquiring and using information" and "attending and completing tasks." T 69. The Appeals Council denied review on May 6, 2021, making the decision the Commissioner's final agency decision. T 54. This action to challenge that decision followed.  This Court has jurisdiction pursuant to 42 U.S.C. § 1383(c)(3).

### B.  Medical and Educational Evidence

The Court assumes familiarity with the facts and will set forth only those facts relevant to the Court's decision in the body of the decision below.

## II.   DETERMINING SSI BENEFITS FOR INDIVIDUALS UNDER AGE 18

"An individual under the age of eighteen (18) is disabled, and thus eligible for SSI benefits, if he or she has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *R.W. ex rel. Wilson v. Comm'r. of Soc. Sec.*, 1:14-CV-0642 GTS, 2015 WL 5177664, at *3 (N.D.N.Y. Sept. 4, 2015)(citing 42 U.S.C. § 1382c(a)(3)(C)(i)).  "However, that definitional provision excludes from coverage any 'individual under the age of [eighteen]

who engages in substantial gainful activity....'" *Id*. (quoting 42 U.S.C. § 1382c(a)(3)(C)(ii)).

"By regulation, the agency has prescribed a three-step evaluative process to be employed

in determining whether a child can meet the statutory definition of disability." *Id.* (citing 20

C.F.R. § 416.924; *Kittles v. Barnhart*, 245 F. Supp.2d 479, 487–88 (E.D.N.Y.2003); *Ramos*

*v. Barnhart*, No. 02–CV–3127, 2003 WL 21032012, at *7 (S.D.N.Y. May 6, 2003)).

> The first step of the test, which bears some similarity to the familiar five-step analysis employed in adult disability cases, requires a determination of whether the child has engaged in substantial gainful activity. *See* 20 C.F.R. § 416.924(b); *Kittles,* 245 F. Supp.2d at 488. If so, then both statutorily and by regulation the child is ineligible for SSI benefits. *See* 42 U.S.C. § 1382c(a)(3)(C)(ii); 20 C.F.R. § 416.924(b).

> If the claimant has not engaged in substantial gainful activity, the second step of the test next requires examination of whether the child suffers from one or more medically determinable impairments that, either singly or in combination, are properly regarded as severe, in that they cause more than a minimal functional limitation. *See* 20 C.F.R. § 416.924(c); *Kittles*, 245 F. Supp.2d at 488; *Ramos*, 2003 WL 21032012, at *7.  In essence, "a child is [disabled under the Social Security Act] if his impairment is as severe as one that would prevent an adult from working." *Zebley v. Sullivan*, 493 U.S. 521, 529, 110 S.Ct. 885, 890 (1990).

> If the existence of a severe impairment is discerned, the agency must then determine, at the third step, whether it meets or equals a presumptively disabling condition identified in the listing of impairments set forth under 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Listings"). *Id*. Equivalence to a listing can be either medical or functional. *See* 20 C.F.R. § 416.924(d); *Kittles*, 245 F. Supp.2d at 488; *Ramos*, 2003 WL 21032012, at *7. If an impairment is found to meet, or qualify as medically or functionally equivalent to, a listed disability and the twelve-month durational requirement is satisfied, the claimant will be deemed disabled. *See* 20 C.F.R. § 416.924(d)(1); *Ramos*, 2003 WL 21032012, at *8.
> Analysis of functionality is informed by consideration of how a claimant functions in six main areas referred to as "domains." 20 C.F.R. § 416.926a(b)(1); *Ramos*, 2003 WL 21032012, at *8. The domains are described as "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). Those domains include: (i) [a]cquiring and using information; (ii)[a]ttending and completing tasks; (iii) [i]nteracting and relating with others; (iv)[m]oving about and manipulating

objects; (v)[c]aring for [oneself]; and (vi)[h]ealth and physical well-being. See 20 C.F.R. § 416.926a(b)(1).

Functional equivalence is established in the event of a finding of an "extreme" limitation, meaning "more than marked," in a single domain. 20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8. An "extreme limitation" is an impairment which "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(I).

Alternatively, a finding of disability is warranted if a "marked" limitation is found in any two of the listed domains. 20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8. A "marked limitation" exists when the impairment "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(C).

*Id.*, at *3–4.

## III.    THE ALJ'S DECISION

Generally, in his decision, the ALJ made the following six findings of fact and conclusions of law.  First, that Claimant, born on August 17, 2004, was an adolescent on the date of application, and remained an adolescent through adjudication. T 65.  Second, that Claimant had not engaged in substantial gainful activity since the application date. *Id.* Third, that Claimant suffered from the severe impairments of borderline intellectual functioning, depressive disorder, attention deficit hyperactivity disorder, anxiety disorder, and obstructive sleep apnea. *Id.*  Fourth, that Claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I ("the Listings"). *Id.* at 66-68.  Fifth, that Claimant did not have an impairment or combination of impairments that functionally equaled an

impairment set forth in the Listings. *Id.* at 68-72.  In this regard, the ALJ found that Claimant

had the following limitations:

> less than marked limitation in acquiring and using information;
> less than marked limitation in attending and completing tasks;
> less than marked limitation in interacting and relating with others;
> no limitation in moving about and manipulating objects;
> less than marked limitation in the ability to care for herself;
> less than marked limitation in health and physical well-being.

T 69.

Sixth, and finally, that Claimant had not been disabled, as defined by the Social

Security Act, since June 15, 2017, the date the application was filed. *Id.* at 72.

## IV.    STANDARD OF REVIEW

"A court reviewing a denial of disability benefits may not determine *de novo* whether

an individual is disabled." *Melinda V. v. Comm'r. of Soc. Sec.*, 5:21-CV-0743 (GTS), 2022

WL 4225224, at *4 (N.D.N.Y. Sept. 13, 2022)(citing 42 U.S.C. § 405(g); *Wagner v. Sec'y of*

*Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990)).  Rather, "[d]istrict courts review

a Commissioner's final decision pursuant to 42 U.S.C §§ 405(g) and 1383(c)(3), and 'may

only set aside a determination by the Commissioner if it is based on legal error or not

supported by substantial evidence in the record.'" *Hill v. Comm'r of Soc. Sec.*, No.

1:19-CV-5096 (ALC), 2020 WL 5768726, at *5 (S.D.N.Y. Sept. 28, 2020)(quoting *Cole v.*

*Colvin*, 12-cv-8597, 2014 WL 1224568, at "*2 (S.D.N.Y. Mar. 24, 2014)).  In the context of

Social Security cases, substantial evidence consists of "more than a mere scintilla" and is

measured by "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting

*Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see Biestek v. Berryhill*, 139

6

S. Ct. 1148, 1154 (2019)(Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (internal quotation marks omitted).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). "However, the reviewing court's task is limited to determining whether substantial evidence exists to support the ALJ's fact-finding; it may not reweigh that evidence or substitute its judgment for that of the ALJ where the evidence is susceptible of more than one interpretation." *Cruz o/b/o M.M.W. v. Comm'r. of Soc. Sec*., 19-CV-9253 ATBCM, 2021 WL 4123969, at *13 (S.D.N.Y. Aug. 25, 2021), *report and recommendation adopted sub nom. Cruz v. Comm'r. of Soc. Sec.*, 2021 WL 4124225 (S.D.N.Y. Sept. 9, 2021). "[O]nce an ALJ finds facts, [the court] can reject those facts only if a reasonable factfinder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in original) (quotation marks and citation omitted). As the Second Circuit has explained, that is a "very deferential standard of review – even more so than the 'clearly erroneous' standard." *Id.*

"[T]he crucial factors in any determination must be set forth with sufficient specificity to enable [the reviewing court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984); *see Dana F. o/b/o O.E.H. v. Berryhill*, No 6:18-CV-1337 (ATB), 2019 WL 7067060, at *3 (N.D.N.Y. Dec.

23, 2019)("An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision.").  An ALJ need not mention every piece of evidence presented when "the evidence of record permits [the reviewer] to glean the rationale of an ALJ's decision." *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983).  However, while an ALJ is not required to explicitly analyze every piece of conflicting evidence in the record, the ALJ cannot "pick and choose evidence in the record that supports his conclusions." *Stacy D. v. Commr. of Soc. Sec.*, 358 F. Supp. 3d 197, 202 (N.D.N.Y. 2019)(cleaned up).

In the context of child disability proceedings, "[w]hen reviewing a child's impairments for functional equivalence, adjudicators must consider all of the relevant evidence, and employ a 'whole child' approach." *Nivia D. o/b/o P.L.D. v. Comm'r of Soc. Sec.*, No. 5:18-cv-0634 (TWD), 2019 WL 4573262, at *4 (N.D.N.Y. Sept. 20, 2019) (internal quotations and citation omitted).  This approach "requires the ALJ to consider a child's everyday activities, determine all domains involved in performing them, consider whether that child's medically determinable impairment accounts for limitations in activities, and determine what degree such impairment limits that child's ability to function age-appropriately in each domain." *Id.* (cleaned up).  "While the ALJ is not required to reconcile every shred of evidence, the ALJ must acknowledge relevant evidence and explain his rejection of such evidence." *Walker ex rel. J.B. v. Astrue*, No. 06-CV-1180 (NAM), 2010 WL 2287566, at *15 (N.D.N.Y. June 3, 2010).  "[W]here the ALJ fails to provide an adequate 'roadmap' for his reasoning, remand may be appropriate." *Cruz o/b/o M.M.W.*, 2021 WL 4123969, at *13.  Conversely, where the ALJ adequately explains his

reasoning, and where his conclusion is supported by substantial evidence, the district court may not reverse or remand simply because it would have come to a different decision on a *de novo* review. *Id.*

The "'deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law.'" *Kenneth H. v. Comm'r. of Soc. Sec.*, 6:21-CV-324, 2022 WL 2954364, at *3 (N.D.N.Y. July 26, 2022)(quoting *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003)). "Thus, 'where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards,' the decision should not be affirmed." *Id.* (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)). "This is so regardless of whether or not the decision is otherwise supported by 'substantial evidence.'" *Id.* (citing *Johnson*, 817 F.2d at 986); *see Johnson*, 817 F.2d  at 986 ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles.").

## V.    DISCUSSION

Plaintiff submits several arguments why the ALJ's decision should be reversed and the matter remanded for further proceedings.  Plaintiff argues that the ALJ's determination that Claimant did not functionally equal a listed impairment is unsupported by substantial evidence due to the ALJ's failure to fully consider the evidence of record, and in selective reliance on evidence favorable to his determination.  Plaintiff makes this argument with regard to the domains of "acquiring and using information" and "attending and completing

tasks." Plaintiff contends that the ALJ failed to discuss the crucial factors relative to his determinations with sufficient specificity to enable this Court to decide whether the determinations were supported by substantial evidence. Plaintiff also argues that the ALJ failed to comply with the AC's Remand Order that required the ALJ to consider and reconcile any decline in test scores and whether the record showed gains in skill areas in recent years. The Court will address these arguments below.

### A. ALJ's Functional Equivalence Determinations

The ALJ indicates that when determining functional equivalence, he evaluated the "whole child" by considering "how the claimant functions at home, at school, and in the community; the interactive and cumulative effects of all of the claimant's medically determinable impairments on the claimant's activities; and the type, extent, and frequency of help the claimant needs." T. 68 (citing Social Security Ruling 09-1p). In doing this, the ALJ indicates that he had to consider how the Claimant functioned in the six above-referenced domains, and whether Claimant had an extreme limitation in one domain or marked limitations in two domains. *Id.* As the ALJ indicates, "[o]ur rules explain that a claimant has a 'marked' limitation in a domain when her impairment(s) 'interferes seriously' with the ability to independently initiate, sustain, or complete activities, and a claimant has an 'extreme' limitation in a domain when her impairment(s) "interferes very seriously" with these same abilities. *Id.* The ALJ further indicates that in making this assessment he had to compare "how appropriately, effectively and independently the claimant performs activities compared to the performance of other children of the same age who do not have impairments." *Id.* (citing 20 C.F.R. 416.926a).

10

In addition, the ALJ indicates that based on the requirements of 20 C.F.R. 416.924a(a) and SSR 09-2p, he was to consider all of the relevant evidence in the case record, which includes "objective medical evidence and other relevant evidence from medical sources; information from other sources, such as school teachers, family members, or friends; the claimant's statements (including statements from the claimant's parent(s) or other caregivers); and any other relevant evidence in the case record, including how the claimant functions over time and in all settings (*i.e.*, at home, at school, and in the community)." *Id*.  As indicated above, the ALJ found that Claimant had less than marked limitations in five of the domains, and no limitation in the domain of moving about and manipulating objects. *Id.* at 69.

The ALJ indicates that in determining the degree of limitation in each of the six domains, he considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 416.929 and SSR 09-2p through 8p, and 16-3p. *Id.*  The ALJ further indicates that "[i]n determining the degree of limitation in each of the six domains of functioning, [he] considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 416.929 and SSR 09-2p through 8p, and 16-3p." Tr. 69.  In this regard, the ALJ indicates that "[i]t was asserted that the claimant has learning problems, anxiety, sleep apnea, depression, difficulty having friends, problems with attention/concentration and staying on task, poor comprehension/difficulty understanding, and problems with reading, writing, and math.  Tr.

11

69.   The ALJ found that "the claimant's medically  determinable impairments could reasonably be expected to cause the alleged symptoms; however, [for reasons discussed in the ALJ's decision], the allegations concerning the intensity, persistence and limiting effects of those symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.*

### B.  Acquiring and Using Information

In the domain of acquiring and using Information, a child's abilities to learn, think about, and use information; skill development; and ability to follow directions is considered. *See* Social Security Ruling ("SSR") 09-3p, 2009 WL 396025, at *2 (Feb. 17, 2009).  As the Commissioner points out, in this domain the Agency has identified the following examples of typical functioning for a child the age that Claimant was during the pertinent period:

• Continues to demonstrate learning in academic assignments (for example, in composition, during classroom discussion, and by school laboratory experiments).

• Applies learning in daily situations without assistance (for example, going to the store, getting a book from the library, or using public transportation).

• Comprehends and expresses simple and complex ideas using increasingly complex language in academic and daily living situations.

• Learns to apply knowledge in practical ways that will help in employment (for example, carrying out instructions, completing a job application, or being interviewed by a potential employer).

• Plans ahead for future activities.

• Begins realistic occupational planning.

*Id.* at *6.  This also provides:

To further assist adjudicators in evaluating a child's impairment-related limitations in the domain of "Acquiring and using information," we also provide the following examples of some of the limitations we consider in this domain.

12

These examples are drawn from our regulations and training. They are not the only limitations in this domain, nor do they necessarily describe a "marked" or an "extreme" limitation.

In addition, the examples below may or may not describe limitations depending on the expected level of functioning for a given child's age. For example, a toddler would not be expected to be able to read, but a teenager would.

• Does not demonstrate an understanding of words that describe concepts such as space, size, or time (for example, inside/outside, big/little, morning/night).

• Cannot rhyme words or the sounds in words.

• Has difficulty remembering what was learned in school the day before.

• Does not use language appropriate for age.

• Is not developing "readiness skills" the same as peers (for example, learning to count, reciting ABCs, scribbling).

• Is not reading, writing, or doing arithmetic at appropriate grade level.

• Has difficulty comprehending written or oral directions.

• Struggles with following simple instructions.

• Talks only in short, simple sentences.

• Has difficulty explaining things.

*Id.*

With regard to this domain, the ALJ concluded:

Upon administration of the WISC[3]-IV, in 2013, the claimant achieved a full-scale IQ score of 87 (Exhibit 28E, page 63). Upon administration of the WISC-V, in 2017, the claimant achieved a full-scale IQ score of 71 (Exhibit 4E, page 2). However, the examiner noted that the 2017 results may be an underestimate of her true capabilities (Exhibit 4E, pages 11 & 13). Upon administration of the WISC-V, in 2020, the claimant achieved a full-scale IQ

---

[3]WISC is the Wechsler Intelligence Scale for Children.

score of 73 (Exhibit 24E, page 43).

The claimant received special education services (Exhibits 16E, 24E, 28E, 2F, 9F, 16F, and 24F), and there was evidence of the claimant performing below grade level in several areas (Exhibits 4E, pages 3 & 12; 13E; 24E; and 2F) and having low course grades (Exhibit 24E). However, in 2017, she passed ELA[4] and Math, with grades in the low 70s (Exhibit 4E, page 9). In 2018, she achieved a 70 in math and 75 in science (Exhibit 24E, page 18). As of April 2020, the claimant's most recent report card indicated she was passing her classes (Exhibit 24E, page 43). She had an 85 in English, 75 in literacy read, 74 in Global History, 68 in Algebra, and 73 in Science (Exhibit 24F, pages 21 & 22).

Upon consultative intelligence evaluation, in 2017, the claimant recalled and understood instructions (Exhibit 4F, page 2). Jeanne A. Shapiro, Ph.D. opined that the claimant had no limitations in understanding and following simple instructions and directions, and no limitations learning in accordance to cognitive functioning (Exhibit 4F). State consultant S. Hennessy, Ph.D. opined that the claimant had less than marked limitation in the acquiring and using information domain (Exhibit 2A). Upon speech-language evaluation, in 2019, the claimant's receptive language ability was below average, expressive language was at the lower end of average, memory ability fell below average, and overall phonologic ability and comprehension and reasoning abilities were within the average range (Exhibit 16E, page 22).

The totality of the record supports a finding of less than marked limitation in the claimant's ability to acquire and use information.

Tr. 69-70.

Plaintiff argues that remand is warranted because the ALJ did not properly evaluate Claimant's functioning in this domain. Plaintiff contends that Claimant had at least marked limitations in acquiring and using information, but that the ALJ's determination largely ignores evidence in reaching a finding that Claimant had less than marked limitations in her abilities to acquire and use information. Plaintiff asserts that the ALJ ignored the evidence favorable to Claimant and cherry picked evidence that supported the ALJ's conclusions. In

---

[4] ELA is English Language Arts.

14

this regard, Plaintiff argues that "the ALJ notes Claimant had a history of special education, was performing below grade level, and had low course grades, but the ALJ's citation to Claimant passing English and Math in 2017 ignores the bulk of that report." Pl. Br. at 10 (citing T 70, in turning citing Exhibit 4E/9). Plaintiff maintains that aside from Claimant passing these classes prior to her application, Claimant barely passed, with significant support. She notes that the record reflects that although Claimant wanted to succeed, she could not do so. T 285. Plaintiff also contends that Claimant was noted as often withdrawn, keeping to herself, and displaying variable effort, T 286, and social and emotional issues were more prevalent on those days where her effort was poor. T 285. Plaintiff maintains that evidence in the record describes Claimant's significant delays since she was in elementary school. T 286. Plaintiff indicates that while the ALJ noted Claimant achieved 70s in math and a 75 grade in science in 2018, T 70, this is a report from Claimant's Eighth grade year where she failed English, Spanish, and Social Studies by large margins. T 483. Plaintiff indicates that the record reflects that Claimant's total GPA was 66, only one point above passing. T 483.

Plaintiff also argues that the ALJ "conspicuously skips mentioning Claimant's 2019 performance, her first year in high school. Claimant's final averages for the 2018 and 2019 school year included Literacy 53, Physical education 43, English 9 of 51, Global History 1 of 46, Algebra 59, and General Earth Science of 54." Pl. Br. at 10 (citing T 1027). Plaintiff acknowledges that the ALJ notes Claimant's scores from 2020, T 70 (citing 24F/21-22), indicating that Claimant had improved her English 9 from a 51 to an 85 in the 2019–2020 school year. But, Plaintiff argues, this was Claimant's second time taking the classes. T 1027. Plaintiff points out that Claimant also repeated Global

History 1, improving her average from a 46 to a 74 in the process, as well as repeating her

Literacy class and improving her average from a 53 to a 75. T 1027. Also repeated was

General Earth Science, which improved from a 54 to a 73. T 1027.  Plaintiff also points out

that although Claimant was changed from Algebra 1 in 2018 – 2019 to Algebra A1 in 2019–

2020, Claimant's grades actually dropped a point. T 1027.  Plaintiff points out that

Claimant's "actual grade was a 17" in Algebra 1 due to the fact that "very few online

assignment were ever completed." T 1028.  Plaintiff contends that Claimant was repeating

her second year in Ninth grade, T 484, but the ALJ fails to mention this fact in his decision.

> Plaintiff further argues:
>
> The ALJ notes the speech-language evaluation in 2019 for the proposition that Claimant had some average and below average scores. T 70. Like the 2017 evaluation cited, this rationale does not address critical components of the examination and findings resulting from such. T 70. Claimant's Speech and Language performance evaluation in 2019 was largely ignored in favor of citing to the "average" or close to average findings. T 70. Not mentioned that the Claimant took these tests in a one-on-one, untimed environment with minimal distractions, over several sessions. T 968. During testing Claimant persevered, exhibited increased processing time, and needed subtest directions explained a few times, at times. T 968. She displayed significant weakness in her abilities to associate words, interpret the meaning of sentences, and displayed average capacity to understand paragraphs. T 968. She was only able to make inferences in three of five trials. T 968. Claimant also displayed weakness in her abilities to form sentences with correct structure. T 968. Claimant demonstrated well-below average to above-average abilities in the TAPS[5]-3 subset. T 968. She displayed well below-average scores with word and sentence memory, but other scores were average or above. T 968.

Pl. Br. at 11.  Plaintiff maintains that it is unclear why only selected portions of this evidence

was cited by the ALJ, but contends that "'[i]n evaluating the record, the ALJ may not ignore

or mischaracterize evidence of a person's alleged disability.'" *Id.* (quoting *Brennan v. Colvin*,

---

[5] TAPS is the acronym for Testing of Auditory Processing Skills.

No. 13–CV–6338 AJN RLE, 2015 WL 1402204, at *16 (S.D.N.Y. Mar. 25, 2015)).

Plaintiff further maintains that the ALJ has not mentioned "significant evidence supporting marked limitations in this domain." *Id.* In this regard, Plaintiff notes that agency guidelines provide examples of observations relevant to acquiring and using information, such as whether a child "does little work in class or at home and has fallen behind; may not be promoted to the next grade in school." Pl. Br. at 11-12 (citing SSR 09-1p). Plaintiff argues that the record reflects that Claimant

> was repeatedly noted to be exhibiting similar problems. Her 8th grade report card noted she needed to manage her time better, did not work up to potential, and needs to remain focused on work. T 483. In Ninth grade, Claimant was noted to need to make better use of her time, only partially completed assignments and did not make up those missed assignments, and could not satisfactorily complete coursework at that level. T 432. Claimant was unable to keep up with coursework when in a 15:1 setting. T 433. Her second Ninth grade report card noted that Claimant seldom did assignments on time, failed to make up assignments, did not complete all required assignments, and required a "great deal" of support from her special education teacher in the 12:1:2 setting. T 1028. [A 2020 Educational Evaluation] noted [] that she was consistently falling behind in learning in reading, writing, and math. T 484. 2020 testing showed that Claimant was in the first or second percentile for letter and word recognition, word recognition [fluency], written expression, spelling, math computation, and math fluency. T 485-86. [On the i-Ready Reading Diagnostic] Claimant was functioning at an overall third-grade level in 2020, during her second year of Ninth grade. T 487.

Pl. Br. 12. Plaintiff maintains that this evidence is "clearly significant, but was omitted from discussion." *Id*.

Plaintiff also indicates that the SSA provides examples of typical functioning in the domain of acquiring and using information, "which include the ability to continue to demonstrate learning, apply that learning, and express up to complex ideas." *Id.* (citing SSR 09-3). However, Plaintiff contends, "2019 testing showed that Claimant did not have the ability to use strategies to identify grade level words, narrow possibilities, or cross-check

17

information presented to her." *Id.* (citing T 1009[6]).  Likewise, Plaintiff argues, "[v]ocabulary grade-levels also decreased from a third-grade to a second-grade level at this time, showing she was not continuously learning and improving." *Id.* (citing T 1010).  Plaintiff maintains that it was error to not mention this probative evidence, and that it appears the ALJ "selectively relied" on "those portions of [the opinion] which supported the denial" of disability benefits to Claimant, "while failing to address portions of [the opinion] that favored the grant of benefits to" Claimant.  *Id.* at 12-13 (quoting *Long v. Berryhill*, No. 18-CV-1146 (PKC), 2019 WL 1433077, at *4 (E.D.N.Y. Mar. 29, 2019)).

Plaintiff also argues that the ALJ omitted references to Claimant's structured class settings, which progressively increased in structure throughout the relevant period. *Id.* at 13. In this regard, Plaintiff notes that Claimant

> was provided an inclusion classroom for seventh grade, and was allowed to spend time with a school social worker when necessary. T 657. However, Claimant was later placed into a 15:1 supportive classroom on alternating days. T 980.  In 2019, Claimant was transferred from alternating 15:1 classroom to daily 15:1 class. T 980. Still unable to succeed, Claimant was eventually placed into a 12:1:2 program. T 1022-23. Claimant was consistently provided more selective and structured environments throughout the relevant period, but still had substantial difficulties.

*Id.*  Plaintiff contends that courts have remanded when it is evident that the ALJ did not consider the effects of a structured setting, *id.* (citing *Gonzalez ex rel. C.C. v. Astrue*, 2009 WL 4724716, at *6–7 (N.D.N.Y. 2009)), and maintains that the ALJ's selective citation to the record is legally erroneous. *Id.* (citing *Prieto v. Comm'r of Soc. Sec.*, No. 20-CV-3941, 2021 WL 3475625, at *14–15 (S.D.N.Y. Aug. 6, 2021) ("An ALJ may not 'cherry-pick' medical

---

[6]This is part of Exhibit 24F - Education Records-Medical, dated 04/16/2020 to 06/17/2020, from Liverpool Central School District, T. 1007-1028.

opinions that support his or her conclusions while ignoring opinions that do not... Such

cherry-picking, without proper analysis of the supportability and consistency factors, is

ground for remand.").

> Plaintiff asserts:
>
> Here, the ALJ has cited selective evidence to support his conclusion that Claimant was not disabled, and finding that Claimant had less than marked limitations in this domain. The ALJ's finding is based on legal error, and unsupported by substantial evidence due to these significant omissions. Furthermore, the ALJ has not explained how any of this evidence tends to support his conclusions, or how Claimant's IQ's ranging in the 70s show that she has less than marked limitations. T 69. The ALJ must "build an accurate and logical bridge from the evidence to his conclusion to enable meaningful review." *Hickman ex. Rel. M.A.H. v. Astrue*, 728 F. Supp. 2d 168, 173 (N.D.N.Y. 2010). Absent any explanation of how he reconciled this conflicting evidence, there is no logical nexus between the evidence cited by the ALJ and the less than marked limitation, such that the Court cannot determine whether or not the RFC was supported by substantial evidence.

Pl. Br. at 13-14.

The Commissioner counters that although Plaintiff challenges the ALJ's finding in this

domain, the ALJ supported it by marshaling evidence that is "adequate" to persuade "a

reasonable mind." Def. Br. at 4 (quoting *Biestek*, 139 S. Ct. at 1154). In this regard, the

Commissioner argues that the ALJ properly relied on evidence he summarized elsewhere in

his decision, including evidence that, despite deficits, (a) Claimant had full-scale IQ ("FSIQ")

scores ranging from 71 to 87; (b) she had borderline intellectual functioning; (c) a

speech-language evaluation showed that her comprehension and reasoning abilities were

within the average range; (d) a psychological evaluation showed she was focused and tried

hard; (e) school reports showed that she passed math and English language arts with

grades in the low 70s; and (f) she was good with rules.  T 65, 66-67, 70.  The Commissioner

argues that the ALJ supported his conclusion with substantial evidence, including the above

19

evidence and with the opinion of consultative examiner Jeanne A. Shapiro, Ph.D., who examined Claimant in September 2017.  T 799-800, 804.  Based on that examination, Dr. Shapiro opined, *inter alia*, that Claimant appeared to have no limitations (a) understanding and following simple instructions and directions, (b) learning in accordance to cognitive functioning, or (c) asking questions in an age appropriate manner. T 800, 804.  The Commissioner points out that Dr. Shapiro did not opine that Claimant had either (a) any other limitations in her ability to acquire and use information or (b) any severe or extreme limitations in any other domain.  *Id.* The Commissioner maintains that the ALJ properly relied on Dr. Shapiro's findings that, despite deficits, Claimant recalled and understood instructions; she responded in an orderly and self-correcting style; and she was in the borderline range of intellectual functioning. T 65, 66, 67, 70.

The ALJ found that Dr. Shapiro's opinion was "persuasive" because "it was supported by her examination findings and was consistent with the totality of the record, including formal test results and school reports."  T. 72.  The Commissioner maintains that because plaintiff did not specifically challenge the ALJ's persuasiveness determination, she waived any challenge in this regard.  As discussed above and as will be addressed below, although plaintiff does not specifically address her challenge to the ALJ's persuasiveness determination, the substance of plaintiff's challenge is that the moderate limitations assessed by Dr. Shapiro are inconsistent with the totality of the record.  Thus, the Court does not find that plaintiff waived challenge to the consistency or supportability of Dr. Shapiro's opinion.

The Commissioner also maintains that the ALJ properly relied upon state agency psychologist S. Hennessey's review of the evidence of record in October 2017, T 85-86,

which included Dr. Shapiro's report.  T 85-86. Based on that review, Dr. Hennessey determined in a prior administrative medical finding ("PAMF") that Claimant had "Less Than Marked" limitations in the domain of acquiring and using information. T 88.  The Commissioner argues that the ALJ properly found Dr. Hennessey's PAMF was "persuasive" because it was (1) supported by an explanation;[7] (2) consistent with the objective medical evidence, Claimant's treatment notes, and school reports; (3) Dr. Hennessey's specialty;[8] and (4)  Dr. Hennessey's programmatic knowledge.[9]  T 72.  Again, the Commissioner argues that plaintiff waived challenge to the ALJ's persuasiveness determination because she did not specifically reference it in her brief.  But, for reasons discussed above, the Court does not find that this challenge is waived.

The Commissioner argues that the ALJ marshaled evidence including the assessments from Drs. Shapiro and Hennessy, T 69-70, then properly found that "[t]he totality of the record supports a finding of less than marked limitation in [C]laimant's ability to acquire and use information." T 70.

In responding to Plaintiff's arguments that the ALJ improperly "cherry picked" evidence favorable to his ultimate determination, and that the ALJ improperly ignored or mischaracterized evidence of Claimant's disability, the Commissioner notes that Plaintiff

---

[7]In this regard, Dr. Hennessy explained that school records showed an FSIQ score of 71 and that, despite evidence of deficits, then-recent testing showed that Claimant had English and math grades in the low 70s.  T 88; *see* T 65, 66, 69, 70 (ALJ's citation of the same evidence).

[8]Dr. Hennessey is a Ph.D. psychologist whose assessment relates to her area of expertise. T 89.

[9]As the Commissioner argues, that finding dovetails with the governing regulations, which provide that State agency psychologists like Dr. Hennessey are "highly qualified . . . experts" in the evaluation of disability under the Act,  20 C.F.R. § 416.913a(b)(1), and that ALJs may credit their assessments based on their "understanding of [the Agency's] disability program's policies and evidentiary requirements." 20 C.F.R. § 416.920c(c)(5)).

relies on case law addressed to an ALJ's treatment of medical opinions, *see Prieto*, 2021 WL 3475625, at *14–15;[10] *Brennan*, 2015 WL 1402204, at *16,[11] but points out the record contains only two assessments from medical sources: Dr. Shapiro's opinion and Dr. Hennessey's PAMF, which the ALJ is not alleged to have picked between, ignored, or minimized.

The Commissioner also contests plaintiff's other arguments such as that the ALJ did not reference Claimant's structured learning environment or that the ALJ failed to comply with the AC's remand order.

**Analysis**

Even accepting Drs. Hennessey and Shapiro's opinions about Claimant's functionality in 2017, the ALJ has failed to set forth the crucial factors justifying his findings with sufficient specificity to allow the Court to determine whether substantial evidence supports the ALJ's decision. *See Dana F. o/b/o O.E.H. v. Berryhill*, No 6:18-CV-1337 (ATB), 2019 WL 7067060, at *3 (N.D.N.Y. Dec. 23, 2019).  Rather, the Court agrees with Plaintiff that the ALJ appears to have selectively cited evidence in the record that supports his decision but did not address and reconcile evidence indicating that Claimant's "abilities to learn, think about, and use information" and "skill development" had stagnated and in many

---

[10]("An ALJ may not 'cherry-pick' medical opinions that support his or her conclusions while ignoring opinions that do not... Such cherry-picking, without proper analysis of the supportability and consistency factors, is ground for remand.")

[11]("By unreasonably minimizing Dr. Barandaran's opinion that corroborated Dr. Fauser's opinion, the ALJ mischaracterized evidence in the record. In evaluating the record, the ALJ may not ignore or mischaracterize evidence of a person's alleged disability. Considering Dr. Fauser's opinion was a medical opinion under the SSA definition, and the opinion was not inconsistent with other substantial evidence in the record, both reasons relied upon by the ALJ for discounting Dr. Fauser's opinion were invalid. Thus, the Commissioner's failure to provide 'good reasons' for giving no weight to Dr. Fauser's medical opinion constituted legal error.")(citation omitted)

instances declined.  As Claimant's Special Education Teacher/Program Manager, Catherine Donahue, stated in her February 5, 2020 Educational Evaluation, "[Claimant] is functioning below grade level in reading comprehension.  According to her reevaluation in 2017, she demonstrated below-average ability on the KTEA Passage Comprehension subtest receiving a 73 standard score, which measured her ability to answer literal and/or inferential questions about the provided paragraph. Her evaluation in 2020, has decreased, she demonstrated below-average ability on the KTEA-3 Reading Comprehension subtest receiving a 71 standard score." T 487.  While the evaluator stated that this decrease may have been caused by Claimant's ADHD and/or her anxiety, the ALJ did not provide an analysis reconciling this evidence with his ultimate conclusion that Claimant did not have marked limitations in this domain. The ALJ also did not compare Claimant's functioning to peers who do not have similar conditions.

Further, Ms. Donahue's evaluation indicates that Claimant's reading diagnostic score in phonics decreased from a 2nd grade level in 2019 to a first grade level 2020, that vocabulary score decreased to a 2nd grade level from a third-grade level in 2019, and that her Comprehension:Informational Text Domain decreased to a 2nd-grade level from a 3rd-grade level in January 2019. *Id.*  While the evaluator indicates that Claimant demonstrated improvement in Comprehension:Literature with two levels of growth since the previous January receiving 3rd-grade level up from a 1st- grade level, the evaluator also indicated that Claimant "has not acquired fundamental decoding skills and needs instruction in Phonics. Vocabulary is another cause for concern. This score indicates that the student has gaps in word knowledge that also need to be addressed." *Id.*  This evaluator further indicates that on the Reading Inventory, Claimant's scores indicate "she is functioning at a

23

1st to 2nd-grade level when compared to her peers in 9th grade." *Id.* at 488.  This evaluator further provides that, overall, Claimant's "test scores indicate that she has difficulty comprehending the given text and requires more comprehension strategies such as: monitoring her understanding, Meta cognition (thinking about thinking), question-answer relationships, generating questions, recognizing the structure, close reading, annotating, and summarizing." *Id.*  The evaluator also indicates that this data "correlates with what is seen in the classroom since [Claimant] consistently has difficulty completing the assigned reading tasks in English without using her accommodations in providing curriculum in a kinesthetic manner. This, in turn, negligently affects her ability to successfully complete the assigned reading tasks independently in English. Also, when she struggles with more complex texts and vocabulary, she slows down her reading rate, therefore she benefits from using her learned coping strategies to not have her decoding adversely affect her comprehension." *Id.* While the evaluator indicates that Claimant's decrease in test scores may have been due to her diagnosis of ADHD and that due to instructional gaps Claimant may have experienced anxiety because in the previous school year she only received part of her instructions due to her absences, *id.*, at 488-89, the ALJ did not reconcile this information with his ultimate conclusion that claimant did not have marked limitations in this domain.

This evaluator also indicates that Claimant dropped two levels from 2017 on the Test of Written Language-4 Spontaneous Writing subtest. *Id.* at 489. The evaluator concludes that overall, Claimant's test scores "indicate that she doesn't have the grade-level ability to express her ideas in written form using her learned strategies with formulating paragraphs

with accurate grammar and spelling." *Id.* The evaluator further indicates that this data "correlates with what is seen in the classroom since [Claimant] consistently has difficulty expressing her ideas in written form on grade-level. This, in turn, negatively affects her ability to successfully complete the assigned written tasks independently these past 2 years in 9th-grade." *Id.*

The evaluator also indicates that Claimant is functioning below grade level in math calculation, and that some of her standard scores in 2020 decreased from those in 2017. *Id.* at 489-90.  The evaluator again indicates that one reason for the decrease could be due to her diagnosis of ADHD, and may be caused by anxiety from instructional gaps. *Id.* at 490. As indicated above, the ALJ did not reconcile this information with his ultimate conclusion that Claimant did not have marked limitations in this domain.

This evaluator does indicate, however, that Claimant demonstrated improvement in 2020 under test scores for math reasoning, albeit that the scores were below grade-level. *Id.*  Moreover, the evaluator indicates that Claimant's scores show that she decreased three grade levels in geometry since May 2019, but increased one grade level in Algebra and Algebraic Thinking since December 2018, and that scores remained the same in "Number and Operations" and "Measurement and Data" since May 2019, receiving a 4th-grade level and a 3rd-grade level, respectively. *Id.*  The evaluator indicates that Claimant's test results indicate that she would "benefit from an intensive intervention focused on skills and concepts related to quantitative reasoning and representation." *Id.*

The evaluator indicates that overall, claimant's "test scores indicate that she consistently doesn't have the ability to solve mathematical problems using her learned

strategies." *Id.* The evaluator concluded that "[w]hen comparing [Claimant's] 2014, 2017, and 2020 scores, her reading, writing, and math scores suggest that minimal gains have been made in skill areas over the years." *Id.* 491.

"As non-medical sources, or 'other sources,' teachers are 'valuable sources of evidence for assessing impairment severity and functioning. Often, these sources have close contact with the individuals and have personal knowledge and expertise to make judgments about their impairment(s), activities, and level of functioning over a period of time.'" *Nivia D. o/b/o P.L.D. v. Comm'r of Soc. Sec.*, 5:18-CV-0634 (TWD), 2019 WL 4573262, at *5 (N.D.N.Y. Sept. 20, 2019)(quoting SSR 06-03p, 2006 WL 2329939, at *3 (SSA Aug. 9, 2006)).  "While the ALJ is not required to reconcile every shred of evidence, the ALJ must acknowledge relevant evidence and explain his rejection of such evidence." *Walker ex rel. J.B. v. Astrue*, No. 06-CV-1180 (NAM), 2010 WL 2287566, at *15 (N.D.N.Y. June 3, 2010). Here, the ALJ provides no analysis of Ms. Donahue's evaluation or an explanation of why the ALJ rejected her indications that, in the Ninth grade, Claimant was effectively functioning at a Third or Fourth grade level and, based on 2014, 2017, and 2020 scores, Claimant's "reading, writing, and math scores suggest that minimal gains have been made in skill areas over the years."  Although the ALJ cited to portions of Claimant's educational record with which Ms. Donahue was involved, these are references favoring the ALJ's determination.  The failure of the ALJ to reconcile Ms. Donahue's conclusions of Claimant's significant, grade-level functional limitations suggests that the proper legal standards were not applied, leading the Court to remand.  *See* Nivia D. o/b/o P.L.D., 2019 WL 4573262, at *6 ("Here, the ALJ's failure to articulate the factors in his determination of

Ms. Ostrander's opinion, or even acknowledge her opinion was in the record, reasonably suggests the proper legal standards were not applied and leads this Court to remand.")(citing *Baez ex rel. D.J. v. Colvin*, No. 6:13-CV-142 (DNH/TWD), 2014 WL 1311998, at *11 (N.D.N.Y. Mar. 31, 2014) (finding remand was required where the ALJ failed to even acknowledge a teacher's opinion was in the record); *Rossi v. Comm'r of Soc. Sec.*, No. 5:10-CV-97 (TJM/ATB), 2010 WL 5313771, at *9 (N.D.N.Y. Dec. 2, 2010) (finding remand for further proceedings warranted where the ALJ "failed to reconcile the teacher's findings with other, more positive evidence in the education records, upon which the ALJ selectively relied"), *report-recommendation adopted by* 2010 WL 5325633 (N.D.N.Y. Dec. 20, 2010); *Dabul-Montini ex rel. N.D. [v. Astrue]*, No. 09-CV-966 (TJM/VEB), 2010 WL 3584348, at *7 (N.D.N.Y. July 30, 2010) (recommending remand where "although [the ALJ] referenced the findings of [claimant's teacher] in his general discussion of the evidence[,] the ALJ made no attempt to reconcile [the teacher's] dramatic findings with his 'less than marked limitation' assessment"), *report-recommendation adopted by* 2010 WL 3584289 (N.D.N.Y. Sept. 7, 2010); *Hickman ex rel. M.A.H. v. Astrue*, 728 F. Supp. 2d 168, 178 (N.D.N.Y. 2010) (remanding where "[t]he ALJ provided no rationale for rejecting the opinions of claimant's classroom teachers, special education teachers and school psychologist in favor of the non-examining, consultative physician")).

Liverpool Central School District School Psychologist Lisa Carroll completed a Psychological Evaluation Report on April 16, 2020. T. 507-11.  This Report indicates, *inter alia*, that Claimant was transitioned from an inclusion classroom to a 15:1 program when Claimant transferred to Liverpool Central School District, and then was placed in a 12:1:2

program. *Id.* 507-08. The Report also indicates that based on information from Claimant's special education teacher, Claimant "requires prompting, refocusing and redirection in the classroom due to significant struggles with academic skills including basic reading skills, reading comprehension, written expression, and math reasoning and requires specialized instructions and modified work. Due to her issues with anxiety and her frustration with academics, she requires support from staff to help her with coping, relaxing, socializing and participating in group activities." *Id.* at 508.  The Report indicates that Claimant is generally a cooperative, polite student school, but does experience "significant anxiety, low self-esteem, and struggles with concentration and sustaining her attention." *Id.* at 510. In her summary, Dr. Carroll indicates that the results of the evaluation indicates that Claimant "has very low cognitive skills.  She has difficulty with fluid reasoning and verbal comprehension. [Claimant] has diagnoses of Depression Disorder, Generalized Anxiety Disorder, ADHD and Obstructive Sleep Apnea Syndrome."  *Id.*  Dr. Carroll further indicates that while Claimant "is generally a cooperative student, she struggles with sustaining her attention and concentration, is often anxious, has difficulties with maintaining social relationships with her peers, and is often overwhelmed and frustrated by school. In addition, on the achievement testing conducted by [Claimant's Special Education Teacher], she scores well below-average in the areas of reading, written expression, and math. When taken in conjunction with her processing difficulties on the cognitive testing, it is likely she has significant learning disabilities as well." *Id.*  While the ALJ cites to Dr. Carroll's evaluation, he does so, essentially, only for the reason that claimant was "focused and tried hard" during the evaluation. T 70.  As plaintiff argues, the ALJ's determination ignores the

28

other information in the report indicating that Claimant "requires prompting, refocusing and redirection in the classroom due to significant struggles with academic skills including basic reading skills, reading comprehension, written expression, and math reasoning and requires specialized instructions and modified work," or that due to Claimant's "issues with anxiety and her frustration with academics, she require support from staff to help her with coping, relaxing, socializing and participating in group activities."

Although the ALJ appropriately stated that the governing regulations require him to assess the "whole child" including "the type, extent, and frequency of  help the claimant needs," *see* T 68, given the information in the record cited above by the Court and by plaintiff, the Court cannot confidently conclude that this was done.  While the ALJ indicates that Claimant received special education services, T 70, and while the regulations only require an ALJ to consider, not necessarily discuss, the effects of a structured setting, *Gonzalez ex rel. C.C. v. Astrue*, CIVA1:07-CV-487 (GLS/VEB), 2009 WL 4724716, at *6 (N.D.N.Y. Dec. 2, 2009), the ALJ did not specifically analyze the effects of Claimant's progressively increased structure setting on her ability to function or how she would function outside of such structured setting. *See, e.g. Thompson v. Barnhart*, 2004 WL 896663, at *7 (E.D.N.Y. Mar.26, 2004) (noting that the ALJ failed to consider the child's functioning outside a structured setting where the ALJ specifically relied upon evidence that the child "responded well to the structured milieu").  Furthermore, a court "cannot ... conduct a review that is both limited and meaningful if the ALJ does not state with sufficient clarity the legal rules being applied and the weight accorded the evidence considered." *Morgan on Behalf of Morgan v. Chater*, 913 F.Supp. 184, 188–189 (W .D.N.Y.1996) (quoting Ryan v. Heckler,

762 F.2d 939, 941 (11th Cir.1985)).  Such appear to be the circumstances here, requiring

remand for the ALJ to more fully discuss the pertinent evidence – even that which is

favorable to Claimant - in assessing whether Claimant has a marked or higher limitation in

this domain. *See Keene ex rel. J.T. v. Astrue*, 901 F. Supp.2d 339, 350 (N.D.N.Y.2012)

(remanding where ALJ failed to consider entire record, did not justify his findings with any

evidence beyond a testing score, and made no attempt to reconcile contrary evidence);[12]

*see also R.W. ex rel. Wilson v. Comm'r. of Soc. Sec.*, 1:14-CV-0642 GTS, 2015 WL

5177664, at *8–9 (N.D.N.Y. Sept. 4, 2015)(Remanding case where, *inter alia*, "even though

R.W. received a grade of 70 in ELA, he was still not reading above a 1st grade level and

could not write a complete sentence, while in the 3rd grade. Therefore, the ALJ's finding of

less than marked limitation in acquiring and using information was not supported by

substantial evidence because the ALJ failed to read the evidence in the context of the

report itself.").

Inasmuch as the ALJ's ultimate determination could be altered by information in the

record favorable to Claimant, the failure to reconcile this information was not harmless.

In addition, the evidence of decreases in Claimant's educational functioning, without

the ALJ's specific reference to such evidence, tends to indicate that the ALJ did not fully

comply with the AC's remand order requiring him, as he understood it, to assess and

reconcile any decline in functioning.  *See* T 35.  This by itself is a reason for remand. *See*

*Dommes v. Colvin*, 225 F. Supp. 3d 113, 118 (N.D.N.Y. 2016)("The regulations provide that,

upon remand, an ALJ 'shall take any action that is ordered by the Appeals Council and may

---

[12]Although the ALJ supports his conclusion with evidence beyond test scores, he fails to sufficiently
reconcile contrary evidence.

take any additional action that is not inconsistent with the Appeals Council's remand order.' Accordingly, reviewing courts have found that failure to comply with the Appeals Council's remand order may be grounds for remand.")(quoting and citing 20 C.F.R. §§ 404.977(b), 416.1477(b), and citing *Mortise v. Astrue*, 08–CV–0990, 713 F. Supp.2d 111, 120–24 (N.D.N.Y. 2010) (remanding based on the ALJ's failure to comply with the Appeals Council's remand order to follow the treating physician rule); *Gorman v. Astrue*, 08–CV–0251, 2009 WL 4884469, at *10 (N.D.N.Y. Dec. 10, 2009) (remanding, in part, based on the ALJ's failure to comply with the Appeals Council's remand order to follow the treating physician rule)); *Cabibi v. Colvin*, 50 F. Supp. 3d 213, 229 (E.D.N.Y. 2014)("Regulations provide that on remand from the Appeals Council, '[t]he [ALJ] *shall* take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council remand order.' If an ALJ fails to comply with an Appeals Council remand order, their decision is subject to judicial review and can form the basis for a remand to the Commissioner.")(quoting 20 C.F.R. § 404.977(b) (emphasis in *Cabibi*), also citing 42 U.S.C.A. § 405(g)).

### B.  Attending and Completing Tasks,

In the domain of attending and completing tasks, a child's abilities to focus and maintain attention, and to begin, carry though, and finish activities or tasks, is considered. *See* SSR 09-4p; *see also Bishop v. Colvin*, 7:13-CV-1059 MAD, 2015 WL 1414316, at *9 (N.D.N.Y. Mar. 27, 2015)("This domain considers a claimant's ability to focus and maintain attention, how well a claimant begins, carries through, and finishes activities, the pace at which activities are performed, and the claimant's ability to change activities with ease.").

31

For Claimant's age group, the Regulations provide:

> In your later years of school, you should be able to pay attention to increasingly longer presentations and discussions, maintain your concentration while reading textbooks, and independently plan and complete long-range academic projects. You should also be able to organize your materials and to plan your time in order to complete school tasks and assignments. In anticipation of entering the workplace, you should be able to maintain your attention on a task for extended periods of time, and not be unduly distracted by your peers or unduly distracting to them in a school or work setting.

20 C.F.R. § 416.926a(h)(2)(v).

> As to this domain, the ALJ held:

> School records indicated that the claimant had some difficulties with attention and concentration (Exhibits 4E, 24E, and 28E). However, upon consultative intelligence evaluation, in 2017, the claimant worked with reflection and deliberation, responded in an orderly and self-correcting style, and exhibited normal motor behavior, appropriate eye contact, and good attention and concentration (Exhibit 4F). Dr. Shapiro opined that the claimant had mild limitations completing age appropriate tasks (Exhibit 4F). Dr. Hennessey opined that the claimant had less than marked limitation in the attending and completing tasks domain (Exhibit 2A). Upon psychological evaluation, in February 2020, the claimant was focused and tried hard (Exhibit 24E, page 43). Given the above, a finding of less than marked limitation in the attending and completing tasks domain is supported.

T 70.

Plaintiff argues that the ALJ noted Dr. Shapiro's exam from 2017, and noted the State agency findings from 2017, but cited little evidence otherwise. Pl. Br. at 14 (citing T 70).  Plaintiff argues that "[t]he ALJ has provided no discussion of the evidence relevant to this domain, noting Dr. Shapiro's exam from the start of the period, and them jumping directly to three-years later." *Id.*  Plaintiff maintains that the ALJ "must discuss the crucial factors with sufficient specificity to enable the reviewing court to decide whether the determination is supported by substantial evidence," but has failed to do so here. *Id*. (citing

*Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984)).

Plaintiff argues that the record reflects that Claimant cannot maintain attention while performing classwork, work independently, or complete more than minimal projects. *Id.* at 15 (citing T 704, 814, 839, 875, 966).  Plaintiff contends that the record reflects that Claimant could not edit her work independently, was unable to sustain attention and concentration through the relevant period, and would slow down when questions required one or more sentence responses. *Id.* (citing T 1010, 809, 1018, 1022). Plaintiff maintains that Claimant continued to display increased processing time in required multiple explanations even when in a one-on-one, untimed environment with minimal distractions. *Id.* (citing T 968).  Plaintiff argues that the ALJ's omission "of any real analysis here is harmful, as the evidence of record details significant limitations in this domain." *Id.* (citing *Ferraris*, 728 F.2d at 587).  Plaintiff maintains that "[w]hile the ALJ's decision need not 'mention [ ] every item of testimony presented,' or 'reconcile explicitly every conflicting shred of medical testimony,' the ALJ may not ignore or mischaracterize evidence of a person's alleged disability."  *Id.* (quoting *Brennan v. Colvin*, No. 13-CV-6338, 2015 WL 1402204, at *11 (S.D.N.Y. Mar. 25, 2015)(internal citation omitted).  Plaintiff contends:

> The only other evidence cited was Claimant's psychological evaluation from February of 2020, which the ALJ noted for the proposition that "the claimant was focused and tried hard." T 70. This examination contains significant findings, and it is legal error to focus only on those positive findings when reaching a determination. ALJs are not permitted to focus on just benign findings when the actual evidence of record shows a more serious picture. *See Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474 at 481, 488 (1951) (holding that an administrative action is not upheld under the "substantial evidence" standard merely by citing any evidence to support conclusions of fact while ignoring a preponderance of countervailing evidence. As such, the

substantiality of evidence must take into account whatever in the record fairly detracts from its weight). Despite trying, Claimant was further restricted to a 12:1:2 classroom setting following his examination. T 1022-23. She was a pleasure to be around, but her special education teacher noted she required prompting, refocusing, and redirection in the classroom due to fatigue and diminished concentration. T 1023. IQ was graded as 73 at this examination, and Dr. Carroll noted Claimant struggled to sustain concentration and experienced significant anxiety. T 1023. Verbal comprehension was very low, and spatial reasoning was low average, while fluid reasoning was extremely low. T 509. It was noted she often became overwhelmed and frustrated by school, and likely had significant learning disabilities based on her test scores. T 510. Certainly, there is more evidence here than the notation that Claimant "tried hard" during testing. T 70. An ALJ may not selectively ignore portions of evidence. *Pereya v. Astrue*, No. 10-CV-5873 (DLI), 2012 WL 3746200, at *14 (E.D.N.Y. Aug. 28, 2012).

*Id.* at 15-16.

Given that functional equivalency is based upon "the whole child," there will be overlap of the evidence pertinent to the different domains. Here, for the reasons discussed above and based upon the evidence cited by the plaintiff and the Court, the Court is unable to confidently conclude that substantial evidence supports the ALJ's assessment of Claimant's limitation in the domain of attending and completing tasks. Indeed, the evidence from Ms. Donahue and Dr. Carroll indicates that Claimant had significant limitations in independently focusing in maintaining attention, and beginning, carrying through, and finishing activities or tasks.

## VI.   CONCLUSION

"It is well settled that the crucial factors in any determination must be set forth with sufficient specificity to enable the reviewing court to decide whether the determination is supported by substantial evidence." *Jenia W. o/b/o L.J.R. v. Comm'r of Soc. Sec.*, 20-CV-01303, 2022 WL 507345, at *4 (W.D.N.Y. Feb. 18, 2022)(citing *Ferraris*, 728 F.2d at

34

587).  Although this Court must accept the ALJ's reasonable interpretation of evidence, the ALJ has not provided a sufficient explanation suggesting how a reasonable fact-finder could interpret the opinions and evidence of record as supportive of a less than marked, rather than marked, limitations in the domains of acquiring and using information and attending and completing tasks. *See id.* (citing *Hicks v. Comm'r of Soc. Sec.*, No. 18-CV-00467, 2020 WL 1061488, at *6 (W.D.N.Y. Mar. 5, 2020) ("This Court cannot say that the evidence in the record as a whole definitively supports marked limitations, but the ALJ failed to provide the requisite explanation to enable review of whether her finding in the domains was supported by substantial evidence.")).  Here, after considering the record as a whole and the issues raised by the plaintiff in support of her challenge to the Commissioner's determination, the Court finds that the ALJ failed to provide the requisite explanation to enable review of whether his  findings in the domains of acquiring and using information and attending and completing tasks were supported by substantial evidence. *See Hicks*, 2020 WL 1061488, at *6.  This requires remand for further explanation by the ALJ as to Claimant's limitations in these domains.  Further, as discussed above, remand is also required for the ALJ to address evidence of decreases in Claimant's educational functioning as required by the AC's remand order.  Accordingly, it is hereby

**ORDERED** that plaintiff's motion for judgment on the pleadings (Dkt. No. 16), is **GRANTED**, defendant's motion for judgment on the pleadings (Dkt. No. 21) is **DENIED**, the Commissioner's decision is **VACATED**, and this matter is remanded for further proceedings consistent with this Decision and Order, without a directed finding of disability, pursuant to sentence four of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Dated: September 30, 2022

Thomas J. McAvoy
Senior, U.S. District Judge